Hearson. Welcome back. Thank you, Your Honor. Welcome back to you as well. And to you, Judge McKee, and to you, Judge Strick, on the phone. May it please the Court, I'm Brendan Hearson. I represent Appellant Jamal Mike. And I'd like to reserve, with the Court's permission, three minutes for rebuttal. On August 18, 2016, the District Court, in this case, surrendered subject matter jurisdiction over Jamal Mike's case. That's the conclusion, though. What happened? There was no formal dismissal of the petition. Well, it's the point. It's the formal dismissal. That's correct. But was the word dismissed uttered? Apparently not. By whom? Well, it was certainly uttered by defense counsel. It was certainly uttered by Magistrate Judge Miller. And when she—this—that would be a final disposition over which the Magistrate Judge would not have jurisdiction under the Act, right? Under the Magistrate Judge Act, a report and recommendation can be written and all that, but that's correct. Those recommendations were not launched in this case. But I think what Judge Miller was doing was recognizing what was obvious to every party in the room. And quite frankly, obvious at a later date to the District Court, that there were no violations before the Court. What we have to look at is what was said at the August 18 hearing. And what was said was that the Assistant United States Attorney at the time said to the Court, We're not proceeding. And the Court said, OK. Now, something that gets lost in the briefing, I think, is that the prosecutor did ask for an amendment. But if you look at the transcript of what happened at that hearing, the amendment was not granted. As the District Court on St. Thomas likes to do, he did his own thing. He did not grant the amendment. He did not grant a continuance. He said, all right, so there are no violations before the Court with respect to Mr. Mike Benn. To the extent there are others, he says, to the extent there are others, then I'll leave it to the government in probation. And a report can be properly issued. He makes no reference to amendments. He says in that statement, the case is closed. Wait, what did he say there? Well, he said it's implied. And here's how I believe we know it's implied. Because the non-protonical word. Later on, the Court recognizes that there's been a mistake, I assume. What does it mean in a revocation proceeding for a case to be closed? You know, as Judge Davis of the Fourth Circuit pointed out in one of his great opinions, these kind of cases, they don't keep people up at night. But they are very important. This one did keep me up at night. I can tell you it kept me up last night. But I'll tell you this, what it means in the supervision context, it's the wild west of court proceedings in some sense. But I think, for example, in the Mike case, you know earlier, it's in the docket sheet, there was an earlier revocation against Mr. Mike here before that was dismissed. It doesn't show up on the docket. Do I understand that you are putting some weight on either the use of the word closed or the implied use of the word closed? I am putting significance on the fact that at numerous occasions the Court announced that there were no more violations before the Court. Now, had the Court said there are no more violations but I'm granting a continuance, there are no more violations but I'm allowing an amendment to proceed, that would be a different story. But any ambiguity as to what the Court meant, it attempts, there's nothing. I would argue it's not even ambiguous because every party recognized that. When they went back before Magistrate Judge Miller to do an initial appearance on two C-grade violations, there was obviously no ambiguity there. Everybody, including the government, was under the assumption that there were no more A-grade violations that the case had closed. And they launched an entirely new 32.1 proceeding on the two C-grade violations. Now, as I was saying before, I think the Court at some point recognizes, hmm, I maybe made a mistake. Again, I don't know that this is the fact. But the Court issued this non-proton order and says, well, actually what I meant to do was to amend the petition. But we know from this Court's opinion in Merlino that you cannot by judicial decree change subject matter jurisdiction. And non-proton is precisely that. It's a judicial decree saying we're going to do now what we actually did then. Now, there's plenty of now. He certainly did issue that order. But there was no then because at the time, he did not amend the petition. He explicitly said otherwise. And so what happens is the non-proton order tries to take the place. Just like in Merlino, the scheduling order, the order to issue the summons, this Court found are not enough to extend subject matter jurisdiction. And again, the government agreed. The government recognized this fact as well going forward. And again, the magistrate, Judge Miller, doesn't have necessarily the authority to dismiss. But she certainly has the authority to reflect what's happening. And to the extent that there is any ambiguity, her statements at the initial appearance that the violations were dismissed are clear. Now, we go back before Judge Gomez who says at the next hearing, well, he actually highlights the issue perfectly. He says, well, maybe there is a problem with jurisdiction, but that's why I issued the non-proton order. And again, that's the type of after-the-fact correction that's not allowed. What is your best case in terms of whether or not that is an appropriate use of the non-proton force if the court has that authority? Well, the question of what is a non-proton order doesn't come up too often in this context. There is, as far as I can tell, virtually no cases on point with a non-proton court regarding jurisdiction. I found none. But there is an 1880s – Mitchell, are you familiar with that 1880 Supreme Court case? 1880? I can't say I'm familiar with it, but – It basically laid out the limitations of when a court issued a non-proton order. And clearly cannot do that when it's trying to correct the court says the latches, the CHES of the parties. And that would seem to be precisely what's at play here is you can't non-proton your way out of a jurisdictional issue. And look, I understand this. Court reviews documents all the time, and we all know that on occasion non-proton gets thrown around to pay for over mistakes. And sometimes it's if the tree falls in the forest and no one hears it, no one complains because both parties wanted it to be that way. But when you have a situation like you have in this case where one party is explicitly stating no more jurisdiction, you can't non-proton your way out of that. Now, wait. Let me ask if we could get Judge Sirica in here if he has questions at this point. We have five minutes left. Judge Sirica? No, I have no questions. Oh, all right. Now, where did the court say no more jurisdiction? And I just did a quick search of the record, actually, from the word closed. Now, the one that doesn't appear in any one record discloses yours, but you said no more jurisdiction. In the September 8th – I think it's September 14th hearing, Judge Gomez acknowledges and asks defense counsel, are you saying that I no longer have jurisdiction? And he says, I amended the petition. And so to the extent you want to talk about that, you can file a briefing on that. Who says I amended the petition? On page 248 and 249 of the record, it appears that Judge Gomez – and I'm paraphrasing his statements – but it appears that at that point he recognizes in a way that was clearly not the case in the August repetition hearing that there may be a jurisdictional problem. But didn't he say at the September 14th proceeding that there was nothing dismissing – that nothing had occurred dismissing violations? And he does say that. He said that – I mean, he made that very clear. He does say that, but that comes after the recognition that in the non-protunct order that it was all but closed. I say all but closed because it's true. I agree with Your Honor that there's no statement saying dismiss, but in the supervised police context, I submit that there doesn't have to be. To the extent that magic words are necessary, that doesn't happen at the supervised police level. It is common. I've done my position in Maryland for a decade as a public defender. I've done dozens upon dozens of petitions on supervision. And sometimes there's no reflection on the docket that there was a dismissal. Sometimes there's a reflection in the judgment in response to a plea agreement. But even in his own docket, you see earlier a prior violation against Mr. Mike was – Well, doesn't everybody proceed as if this was a live proceeding throughout? Everybody proceeds as though it's a live proceeding but over the defense's vehement objections. And the defense has no choice. And the objection was what? The objection was no jurisdiction. On September 14th – And the defense's position that there was no jurisdiction was because of what? Because of the closure of the petition at the August hearing. Because the court's acknowledgment – We're back to closure. We are. And I acknowledge that the record does not say dismiss. I agree with that. But it doesn't have to. If the court is telling the parties that there are no violations before it, that is the same thing as saying dismissal. Do I understand your basic position to be that the district court lacked jurisdiction to adjudicate these violations in an amended petition? I mean, is that effectively – The crux of what we're arguing today is absolutely that. The jurisdiction lapsed on August 18th. So what case law do you have out there that would support your position? Merlino is the strongest case on point. I agree that the government would have us litigate whether Naranjo applies to this proceeding. Merlino, of course, has had an interesting past since it came down, but I think we can assume it's viable. It is viable. But I'll be interested to hear from your adversaries whether or not she believes it's on point. I believe the government wants to have this court interpret whether Naranjo and the case law that talks about whether you can adjudicate a violation if it comes after the expiration as long as there was a prior notice. I don't think the court needs to get to that issue here. Because – and frankly, I have stated that I think the court should take the position that it cannot. Even if it lays back? Well, if it relates back – the position of the Second Circuit is somewhat related to what Judge McKee said. That you can if there is a relation. Now, whether there's a relation and what that means, that's tough to say. If relating back – Is that Edwards? That's correct. That's correct. And I don't believe it's clear. The government's recourse is over the fact that the Third Circuit has never adopted Naranjo and, in fact, has a history in the parole violation context of going the different way when it comes to reviving violations after the fact. Let's – and this is perhaps going back to the beginning where I maybe should have asked this question at the outset. But – because it seems to be first thing. What about the plain text of 3583I? I mean, how do you get around that? Well, it hinges, as Judge Leeson in his Thompson opinion, which admittedly is not binding on this court, but talks about you can't put too much stake in an indefinite Article A. I would certainly adopt his reasoning, which is that it needs to relate back to those exact violations. I don't believe that the statute is clear. The text doesn't say that. Well, I would argue the text is ambiguous in that it says – – extends beyond the expiration of the term of supervised release for any period reasonably – it seems to me that's the only ambiguity – reasonably necessary for the adjudication of matters arising before the expiration. We're talking about six days. For any – such a – Matters. Matters. Plural. All the case law gets – starts digging into the different words matters and such a – which I see my time is up. I would say that the Edwards opinion takes a slightly narrower focus. And if this court is going to entertain an interpretation of Toronto, which I think this case does not present, obviously, but if it is, I would advise the Edwards role, or the Edwards interpretation, because that requires us to at least have some relationship to what happened before. Now, when the court engages in that analysis, then we get into a huge debate over what's the relationship? Are two C-grade violations related? Because if you're going to engage in this analysis, you have to believe that those C-grade violations stayed viable until the court reinitiates the A-grade violation. The C-grade is fairly to report the A-grade violation. That is fairly to report. It is an arrest. Possession of a – well, it's – honestly, the judgment doesn't even reflect that one of the C-grades was adjudicated. It only reflects the 72-hour notice issue. I did not get into the discussion of the mutual impotential. I'll touch on it in rebuttal, of course. Let me ask you, Sirica, for any questions. Even if we were to adopt Edwards or something close to it, why wouldn't it apply here? Yes, thank you, Judge Sirica. If you applied Edwards, I think the analysis would have to be what's the relationship between the C-grade violations. Of course, this gets us right back into this question that's in the brief, so we haven't touched on it too much. The doorstop in this case, so to speak, if you have a government, is that possession of a firearm warrant that is issued prior to the expiration. So you would have to relate everything back to the possession of a firearm. And I contend that the C-grade violations are not clearly related to that, that they're more related to the subsequent violations that I say are untimely. The Second Circuit isn't the only circuit, however, in a favor position that would be not supportive of your position, right? I mean, Edwards itself cites the Fifth and the Eleventh Circuits. That's correct, and I believe that the government cites an unreported Fourth Circuit opinion that takes the more narrow approach of Naranjo. And that's true. The two or three circuits that have weighed in on 3583I have taken a more expansive view. But as I said before, this Court, historically, on parole violations, and the specific case name that's given to me, has taken a different route. Back when there was the old parole days and there was the five-year expiration, this Court required a relationship back to the initial violation. The old parole days, you probably weren't even born. Well, I won't reveal that. I hope that occasionally one or two would come in the door. I've read about them. I agree, I'm not the only one. I've told him about them. Oh, the support room wasn't here, I'm sure, but I've read about them. Thank you. Thank you. We'll have you back on as a follow-up. Ms. Edwards. Good morning, Your Honors, and may it please the Court. Meredith Edwards on behalf of the United States. I would argue that the non-proton order is really irrelevant. I think that the Court was just making clear what it feared was not clear, and that was that he did not dismiss the violations. And it's true, the government did believe that the Court had agreed to not proceed on those violations, but the Court made it abundantly clear that that was not the case during the session. How long could he have been held in custody, waiting for these great sea violations to occur? I'm sorry? How long could a man have been held in custody after the first order of security, waiting for the great sea violations to be executed? Is there any limit on that, Your Honor, without pressing any evidence to justify his detention? I believe that the statute just speaks to any reasonable time necessary. The government was waiting on probation to issue the amended petition, and I believe it talked about... Why? The probation officer, I'm assuming, was in the Court, correct? Correct. And why wait? Why wait for the probation officer to stand? Did you, and there's no issue about this on your side, it's a clear that the fact that the prior arrest, the new arrest, is going to be admissible, those others don't govern here, and yet that's the probation officer. How long, the time that you found out that Mr. Mackey was arrested, did he ever inform you of the new arrest? No, you've got the violation. Well, what is important is that the defendant is afforded proper notice, and at that time, there had been no notice that he would be facing the great sea violations. Whose fault was that? Well, that was the whole purpose for requesting that it be amended so that he would have the notice. Well, then, just the entire problem, well, let me go back to the language, because we just discussed what our period would be reasonable, but of course, the period of time doesn't simply have to be reasonable, it has to be reasonably necessary. So, what was the necessity reason here for this period of time that was on hold? I mean, was this related to the competency of the victim? Was it a question of competency? No, in terms of the August, the amendment between August 18th and then the revised or amended petition that was issued on August 24th, let me ask you, which time period are you looking at? Well, actually, I was focusing only on the language of the statute at first, but we are talking about a period of time that extends beyond the expiration of the term. So, that's the period I assume we have to look at, whatever period of time from the expiration of the term to the eventual adjudication of the matters. Well, up until the 18th, both the defense counsel and the government have requested continuances, and so I don't think that the time period from… This is for the great A, not the great C. Correct, correct. And that was related to the condition, medical or otherwise, of the victim, wasn't it? At least some of it? In terms of the government's request? Yes, the government's request, Mr. Barnes. Correct, and inability to locate them initially. So, I believe that Mr. Mike made his initial appearance on June 22nd, and then the reason behind the delays after the August 24th hearing was due to the court's discovery that all parties had been confused about what he believed had happened, and that is… I thought it was because the government didn't want to, and correct me if I'm wrong, I thought the government didn't want to proceed with the great A because you were going to get a situation where the witness that you need for the great A will be impeached and be totally useless for the prosecution of an undelivered charge. So, you didn't proceed on it. Correct, correct. Yes, it was easy for you. But in terms of afterwards, once the amended petition, once we came to the hearing, the September 14th hearing, where we believed that we would be proceeding only on emergency violations, and the court announced that in fact, made it clear that the government didn't have the power to dismiss those violations, and the court did not itself dismiss the violations. But does that beg the question that Mr. Grissom's point is that the court may well have, by its actions and its statements, basically dismissed the petition already at the prior hearing. It may not have realized it was doing that, but it may have done that at the prior hearing. All I can say is that according to the court, he did not, and that... According to the court, in September, he did do it. Correct. But if you look at what he said in August, it showed us that he said, well, look, there's nothing before me. There's no petition. Doesn't that mean there's no petition? Well, it could mean that there is nothing the government... He understandably expected that the government would bring any witnesses in if it had been proceeding with degree-A violations, but once the government said that it was not seeking to do so, there were no witnesses there, so there was no way to proceed on those violations. You've heard your adversary's characterization of what occurred before the district court. Should the district court ever be entitled to adjudicate violations notwithstanding the prosecution's expressed willingness to drop those violations? According to the case law, yes, because it would be, in some cases, that it would be considered an abdication of the district court's duties in terms of his judiciary sentencing and supervisory... And in that case, we expressed the district court's primary consideration in handing down the abdication sentence is the defendant's breach of trust, and that trust is really a relationship of trust with the court. Correct. So would it also be your position that what the court is doing in what would appear to be, to some, maybe an unauthorized action or an action under which the court has jurisdiction, that the court has a particular interest here in the supervising and the trust relationship between that person and the court? Yes. This is, we're going to run out of time before we go to the next court. The warrant argument interests me. Why should we look at the word warrant, 3583, as meaning something other than a warrant in the warrant clause of the Constitution? A warrant's a warrant. The Constitution's not drafted in terms of the government's limitations to take someone into custody. It's not drafted in terms of whether or not someone is under, quote, constructive custody of such an inexistent time for the member who was drafted. Well, the majority of circuit courts have pointed out historically it has been treated differently. Has any circuit other than the Ninth found the meaning of the word to be coextensive with its use in the Constitution? No. What's the procedure when a petition is filed? I assume the probation officer files the petition and sends it to the judge. Is it signed under penalty for you or anything analogous to that? In the St. Thomas division, that did not, in the practice, I believe now, but it hasn't had any reputations in front of me, but I was told that they were now changing and they were going to use the uniform report petition that are in fact the signature line does attest to being under a penalty of perjury. Judge Sirica, we've got five and a half minutes left. Do you have any questions at this juncture? Does that indicate that the government believes that they were wrong in not doing this before, that there was some trouble? I'm sorry, Your Honor, just what indicate? That the use of the uniforms? Filing the petition, I think the question is filing the petition under oath. That was a change that the probation office made, but I think it's certainly the better practice that avoids the need to appear before you and argue whether or not it means it just by simply attesting under penalty of perjury. However, given the practice, I don't believe that it was wrong. I think that as the court is interpreting the history and whether it falls within the Fourth Amendment, I pointed out that the special relationship between the probation officer and the court really takes away from the need of having the sanctity of the courtroom proceedings that the swearing under penalty of perjury is intended to supply. Just to make sure I understand the chronology here as well as the content, the May 31 arrest warrant was based on the first relocation petition, is that right? Correct. And the first relocation petition contained what? It alerted the district court to the fact that Mr. Mike had been arrested for various crimes, but the specific violation that was noticed in the warrant was that he had possessed a firearm because the allegations underlying each of those charges involved the use of a firearm. And it included the attempted murder charge? It did not include the warrant itself. The warrant just specified that he violated the terms of the petition. Correct. And did that, was there an affidavit with the Virgin Islands arrest warrant that was affixed to that petition? I believe that it was, I know that it was subsequently, but I do believe that it was in fact included with the initial one. When you say subsequently, do you mean the second, the amended petition? Well, the petition that went along with the May 31st warrant was then amended on June 24th to give more details and just informally outline the two violations and the rejected guidelines. And was there an affidavit with that? I'm still talking about the great equity. Correct, yes. Was there an affidavit specific to that? Yes, yes. But what is the significance of that? Simply that, with answering your question, I do think that it gives that much more notice to the defendant of the violation and in turn the reasonable belief that these violations occurred by the probation officer. The probation officer's reasonable belief and the court's reliance on that. You're also suggesting that if 3583I does fall under the fourth amendment, that that second petition is sufficient to meet the probable cause requirement of the fourth amendment, so we don't get 3583I versus the fourth amendment warrant. Willingness to apply the probable cause. Yes.  Correct. Did you just direct that to any further questions? No, I don't. Thank you very much. Ms. Edwards, it's your person at the bottom. I was thinking, as the questions were coming in, that prohibition on subsequent remedial measures is there because it's so damning in the rules of evidence. And what we have in this case is clearly subsequent remedial measures that were taken by the probation office to correct their practices. Well, that's an evidentiary rule. It is. And the rules of evidence don't apply. But the point being, the spirit of the rule is you can draw a lot of conclusions from what people do after they're caught doing something incorrectly. And in this case, it's true. Unlike my former district, the Virgin Islands Probation Office apparently was accustomed to submitting violation forms that did not have any swearing under penalty of perjury, that did not in some instances even include a list of the violations at all. Now, apparently, the practice has been changed. And there can be probably no greater evidence that the prior practice was wrong than the subsequent change. I want to talk about this neutral and detached rule because the government's case law that they cite to is solely about questioning witnesses. And I want to make it clear that we take no issue with the court's authority to initiate proceedings against someone. And we take no issue with the court's questioning, although it may go beyond what is normally allowed, what this court did, which I have never seen. You mean the court's asking questions? That's correct. Although, let's be clear, the government was the one directing the witness. Well, of course. But just as the principle enunciated in Deese suggests a relationship of trust here essentially, that certainly argues in favor of the court's having even broader discretion to ask its own questions, doesn't it? Well, I think it – again, I'm not really – I would say yes to some extent. The court is right that Deese's opinion and then the guidelines itself have that choice between are we punishing the conduct or are we punishing the trust. We'll go with the trust. I agree with that. We don't take tremendous issue with the court's authority to ask questions. But what happened in this case is not just asking questions. I have never come across a case – and I certainly have never experienced one myself – where the court has compelled the government to produce particular witnesses by order. That has never been done before. And what the court is compelled to do is to never abandon their proper role and assume one of the advocate. And there can be no more – there can be no stronger role of advocate than actually compelling the attendance of particular witnesses at trial over the objection of the government. This is not asking questions. This is not initiating a proceeding. This is actually telling the government how to present its case, who to bring, and what to do. Why would that not be an appropriate exercise of judicial discretion so long as the court was not intending to reach a particular result? Why would it not be a proper exercise of discretion within – I mean within the supervised release context for the court to reach out on its own or to direct a party to produce someone if that witness can present evidence which permits the court to make a more educated decision on the matter? Because it turns the court into an advocate. No. That specifically was what I tried in my question to exclude. So long as the court is not trying to build a record that will support a particular result, shouldn't that be within the realm of the district court's discretion to possibly even compel the attendance of certain witnesses or the delivery of certain evidence? I'll certainly concede it's a difficult question, but I do think that the case law and more importantly the statute does not permit the court to dictate which witnesses are going to be called. I certainly think it permits the probation officer to initiate proceedings and of course the court signs off on that. It certainly allows the court to inquire of witnesses that are properly before it. But isn't it – in fact, isn't it a profoundly different question whether the court can direct the government to produce someone as opposed to directing you to produce someone? I would say – The latter of which would seem to me to be completely out of the question. I would put them both in the same camp because what's wrong about both of them is that the court is now stepping over the line between neutral arbiter and starting to tell people who's going to play the game. There's a privilege involved in the latter. Well, certainly, and that's you. I certainly agree, Judge McKee. There's privilege issues all over the place and there's burden issues and everything else. But look, I'm not going to lie and act like supervised relief cases are a clear cut. They aren't. But this court has an opportunity here to lay down some clear rules in numerous contexts and I think that's sorely needed. But I will say that at the – one of the most significant issues with the witness situation is that the government repeatedly said it wasn't going forward, it wasn't going forward, and the court says, oh, yes, you are, and you're going to bring this person. And I've never encountered that. Well, Judge Sirica, do you have questions? No, I don't. All right. Thank you very much. Thank you, Your Honor. Mr. Hurson, thank you very much.